## NAPOLEON B. DANIELS v. NATHANIEL U. WEEKS.

*Evidence—Credibility of witness—Attachment—Taking papers to jury-room.*

1. A father-in-law testified that his son-in-law, at the time of making certain notes, agreed to pay them in the fall when he butchered his hogs, out of the avails of the pork, and other products of the farm. The son-in-law, on cross-examination, testified that the first talk he had with his father-in-law about letting him have the hogs as payment upon the notes was about two weeks before he transferred them to him (being long after the making of the notes), and was then asked the following question: "Then it is not correct, as your father-in-law testified, that, when he let you have the money in the spring, the talk was that, when you killed your hogs in the fall, you would pay him? Have any such talk as that?" which question is held to have been properly excluded, unless the clause, "as your father-in-law testified," was eliminated therefrom.

2. Where before attaching a number of hogs, which the plaintiff claimed the defendant had sold with intent to defraud him, the plaintiff, in a conversation with the purchaser, claimed to own one-half of the hogs, the purchaser may show on the trial of a replevin suit brought to recover the hogs, as affecting the credibility as a witness of the plaintiff in the attachment

suit, that he did not sue for one-half of the hogs in such suit, and that he made no such claim in his bill of particulars, but based his right to recover a judgment upon other items.

3. On the trial of a replevin suit brought by the debtor's vendee to recover attached property, the plaintiff in the attachment suit testified that, in a conversation had with the debtor and his wife about a week prior to the issuance of the writ of attachment, he did not tell the debtor how much he owed him, because he did not know, and that he had never figured out the indebtedness at all. And it is held proper to ask him on cross-examination if he did not swear in the attachment affidavit that the debtor owed him $100, as near as he could estimate the same, and if he never did any figuring on the account, or made any computations or estimate of the amount the debtor was owing him, how he came so to swear in said affidavit; and on objection being made to the questions counsel had the right to withdraw them, and error is not assignable on his statements that he would not insist upon the question, and that both statements were before the jury, such being the fact.

4. Where on the request of counsel for a defendant that certain notes and a bill of sale, upon which the plaintiff based his claim, be taken by the jury, plaintiff's counsel objected unless the bill of particulars was also taken by them, and the court ruled that, if any of the papers offered in evidence were to go to the jury, all should go that had been admitted in evidence, and that, if any were excluded, all should be, to which decision no exception was taken, it will be presumed that defendant's counsel was willing that all should go, rather than that all should be excluded, it appearing from the record that all of such papers were sent to the jury-room.

Error to Kent. (Burch, J.) Submitted on briefs January 15, 1892. Decided February 5, 1892.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Ward & Ward*, for appellant, contended:

1. The court undertook to decide for the jury that Mr. Daniels had not sworn to a particular state of facts, which was error; citing *Wheeler v. Wallace*, 53 Mich. 356.

2. The court erred in allowing the papers to be taken to the jury-room without the consent of both parties; citing *Bulen v.*

*Granger*, 63 Mich. 311; *Harroun v. Railway Co.*, 68 Id. 208; *Hewitt v. Railroad Co.*, 67 Id. 79.

*McGarry & McKnight* and *Robert M. Montgomery,* for plaintiff, contended:

1. As the attachment affidavit had been offered and received in evidence, the remark of counsel that both statements were before the jury could not be prejudicial, as it was true, and it was a subject which counsel would have a right to comment upon in argument to the jury; citing *Thayer v. Gallup*, 13 Wis. 539; *Beebe v. Knapp,* 28 Mich. 53; *Hamilton v. People*, 29 Id. 195.

2. It was discretionary with the trial judge to permit the affidavit, writ of attachment, and bill of particulars to be taken by the jury to the jury-room; citing *Canning v. Harlan*, 50 Mich. 321.

3. Where a defendant in replevin justifies under a writ of execution, the record of the judgment and proceedings on which it issued are receivable in evidence; citing *Gavigan v. Scott*, 51 Mich. 373; and in replevin against an officer levying an attachment, the proceedings in the attachment suit are admissible, even though one of the plaintiffs is misnamed therein, and in the judgment; citing *Barmon v. Clippert,* 58 Mich. 377.

Morse, C. J. This is an action of replevin for the value of eight dressed hogs. The case was tried in justice's court, and appealed to the Kent circuit court, where the plaintiff had verdict and judgment.

The plaintiff claimed to have purchased these hogs of his son-in-law, Frank Peters, December 7, 1888. The defendant is a constable, who subsequently levied an attachment upon the property at the suit of William W. Ward against said Peters; and it was claimed on the trial that the hogs were transferred to plaintiff with intent to defraud Ward. The plaintiff received the hogs and some other property in satisfaction of an alleged indebtedness of Peters to him. On the morning of December 7, 1888, the plaintiff saw Ward at Ward's house, and had a conversation with him about the occupation of Ward's farm by Peters. Plaintiff testified that he talked with Ward about these hogs, and that Ward claimed to

own half of the hogs, because they had been fed on windfall apples; that plaintiff disputed Ward's claim to the hogs. Plaintiff then went out to the farm, in the township of Ada, Kent county, and in the evening of that day Peters transferred to him by bill of sale a cow and colt and these hogs. The cow and colt were valued at $90, and the hogs at the balance of the debt owing from Peters to him. Peters owed him $164, which indebtedness was represented by two notes—one for $100, and the other for $25—and an account of $31.56. The writ of attachment was issued on the same day, but service was not attempted until the 8th. Plaintiff was at the farm when defendant arrived there with his writ, and showed his bill of sale, and claimed the property. Defendant left the farm without making a levy. The next day (Sunday) plaintiff butchered the hogs, and drew them to Grand Rapids. Early the next morning defendant took them upon his writ of attachment, whereupon this suit was commenced.

Defendant claimed that Peters was not owing Daniels anything at the time of this transfer, and that the notes did not exist until after the talk of Daniels with Ward on the morning of the 7th. Under this claim of fraud the defendant's counsel were entitled to great latitude upon cross-examination of the plaintiff, and should have been allowed to ask him whether, in this conversation with Ward, he told him that Peters owed him these two notes. But we do not think any prejudicial error was committed in rejecting the question. An examination of the evidence satisfies us that whether he told Ward or not that he had these notes could have made no difference in the result of the verdict.

Daniels testified in substance that Peters, at the time these notes were made, agreed to pay them in the fall

90 Mich.—13.

when he butchered his hogs, out of the avails of the pork, and other products of the farm. Peters, on cross-examination, testified that the first talk he had with Daniels about letting him have the hogs as payment upon the notes was about two weeks before the transfer. He was then asked this question:

"Then it is not correct, *as your father-in-law testified*, that, when he let you have the money in the spring, the talk was that, when you killed your hogs in the fall, you would pay him? Have any such talk as that?"

The objection to the question, in the mind of the circuit judge, seemed to be to the clause, "as your father-in-law testified," and he ruled that it might be answered if that was left out. Defendant's counsel insisted on the question as it stood, and it was ruled out. There was no error in this. The clause had no proper place in the question, and there was nothing to prevent the defendant from a full inquiry without using it. It is true that the court said that the forepart of this question was an "assumption of something not in evidence," but we do not think this prejudicial to the defendant, as Daniels did not so testify in the exact words of the question.

In the attachment suit the plaintiff in that suit, Ward, recovered a judgment against Peters for $45.54. It was therefore established, for the purpose of this suit, that Peters was indebted to Ward in that sum when the attachment suit was commenced.

Objection is made to the following question, asked by plaintiff's counsel on cross-examination of Ward:

"When you came to bring your suit against Mr. Peters, you didn't sue for one-half of the hogs, did you?"

This question is assigned as error; as are also the remarks of counsel for plaintiff, in which he said, among other things, that he proposed to show that Ward did

not make the claim that he owned half the hogs in jus-
tice's court; that he abandoned it, and trumped up
another and a different claim; and that' he proposed to
show that the only claim that Ward put forth to Daniels
was so preposterous that, even when Ward filed a bill of
particulars, asking $32 for the use of an old wagon, not
worth $3, he did not have the temerity to put that claim
(for half the hogs) in such bill of particulars; and that
his proposition was to show that such claim was not well
founded,—was not even made in good faith. After the
court had ruled that the question might be answered, the
counsel for the plaintiff waived it, and did not insist
upon an answer, stating that he thought the court, in
his remarks, had discounted the force of the testimony.
It is contended that the court paid no attention to the
objection to these remarks, and that the whole discussion
between the court and plaintiff's counsel had the effect
of prejudicing the defendant before the jury. We think
the question in itself was proper. The only claim that
Ward made to Daniels before he bought the hogs was
that he owned half of them. It was proper to show that
when he came to sue Peters he did not bring his suit for
half the hogs, as affecting his credibility as a witness.
It was also competent to introduce the bill of particulars
to show that he did not claim half the hogs in such suit,
but based his claim for judgment upon other items. The
evidence was offered with the distinct disclaimer of any
attempt to attack the validity of the judgment in the
attachment suit, and for the express purpose of discredit-
ing Ward as a witness. Some of the language of the
counsel for plaintiff in support of his right to ask this
question was improper, but, in view of all the evidence
in the case, we are satisfied that the jury would have
rendered a verdict for the plaintiff had these remarks
not been made. The evidence of Peters' indebtedness

upon the notes to Daniels is overwhelming. It is also conceded by Ward himself that the only indebtedness of Peters to Ward, of which Daniels had notice, was a claim for half the hogs, which claim turned out to be "preposterous," to use the language of plaintiff's counsel, and which claim Ward himself abandoned when he came to trial of the attachment suit.

The cross-examination of Ward by plaintiff's counsel was not improper. Ward testified that when he talked with Mr. and Mrs. Peters, about a week before the issue of the writ in attachment, he did not tell them how much Peters owed him, because he did not know; that he had never figured out such indebtedness at all. He was then asked on cross-examination if he did not swear in the affidavit of attachment that Peters owed him $100, as near as he could estimate the same; and if he never did any figuring on the account, or made any computations or estimate of the amount Peters was owing him, how he came to swear to that affidavit. Then counsel said: "I will not insist upon the question. Both statements are before the jury." Counsel had the right to ask these questions, and when they were objected to he had also the right to withdraw them; and the remark that he made was a true one, as the affidavit was in evidence as well as the statement of Ward.

When the jury retired, Mr. Turner, of counsel for the defendant, wanted the two notes and bill of sale, upon which plaintiff based his claim, to be taken by them to their room. The counsel for plaintiff insisted that, if these papers were taken, the bill of particulars should go also. After some wrangling between counsel, the court ruled that, if any of the papers offered in evidence were to go to the jury, all were to go that had been admitted by the court, and, if any were to be excluded, all would be excluded. Thereupon the record shows,

that the two notes, bill of sale, affidavit and writ in attachment, and bill of particulars, were sent to the jury-room. No exception was taken to this action as appears from the record, and it will be taken for granted that defendant's counsel was willing that all should go, rather than that all should be excluded. The jury were instructed that the bill of particulars could only be used as affecting the credibility of the witness Ward.

The court, in his instructions to the jury, fairly submitted the case upon the issues involved, and the verdict was clearly in accordance with the weight of the evidence. No prejudicial error is perceptible.

The judgment is affirmed, with costs.

McGrath, Long, and Grant, JJ., concurred. Montgomery, J., being of counsel in the court below, took no part in the decision of this case.